# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>  Plaintiff,<br>vs.<br>Irvin Lazaro Malboa-Pena,<br>  Defendant. | CR 07-0756-TUC-CKJ (JCG)<br>**REPORT &<br>RECOMMENDATION** |

Pending before the Court is Defendant Irvin Malboa-Pena's Motion in Limine to Preclude Introduction of Expert Testimony filed on August 3, 2007. (Doc. No. 48.) The United States filed a response on August 14, 2007. (Doc. No. 51.) Defendant did not file a reply.

This matter was set for oral argument and was heard on August 23, 2007. Defendant Malboa-Pena was present and represented by counsel. This matter was submitted following oral argument and taken under advisement.

Having now considered the matter, the Magistrate Judge recommends that the District Court, after its independent review, deny the Motion.

## FACTUAL BACKGROUND

Defendant has been charged by indictment with conspiracy to transport and transportation of illegal aliens for profit. The government alleges that the following facts will be proven at trial: On March 26, 2007, Defendant was driving a gold 1993 Honda Accord eastbound on Arizona State Highway 86, which links Tucson and Ajo, Arizona. Two Border Patrol agents observed Defendant following a white Ford Econoline van; the two vehicles

1  appeared to be driving in tandem.  While Border Patrol agents were attempting to follow the
2  van, Defendant increased his speed; he appeared to be trying to prevent the agents from
3  getting behind the van. Ultimately Border Patrol agents discovered twenty illegal aliens in
4  the van.  Defendant was pulled over by Border Patrol agents near the intersection of Highway
5  86 and Postvale Road.

6  Co-defendant Emanuel Velasquez-Sanchez was the registered owner of the van and
7  had obtained a three-day temporary registration for the Honda that Defendant had been
8  driving.  Two cell phones were discovered: one in the van, and the other in the Honda.  Using
9  the phone found in the Honda, a Border Patrol Agent called the cell phone discovered in the
10 van.  The name "Irvin" appeared on the van phone's caller i.d. as the call came in from the
11 Honda phone. Phone records reveal that there were several calls between the two phones that
12 day.

13 The material witnesses testified that they were illegally guided into the United States
14 from Mexico.  They also stated that their family members were going to pay their smuggling
15 fee.  There is no evidence concerning the specifics about the method or manner of payment
16 or to whom payment was to be made.  After the material witnesses were guided into the
17 United States, they were told to get into a van.  Because it was dark, they were not able to
18 identify the driver of the van.  They also did not observe a second vehicle when they entered
19 or were inside the van.

## ANALYSIS

21 The government intends to call Special Agent Daniel Heston as an expert witness
22 concerning the methods and/or manner of operations of alien smuggling organizations
23 between Mexico and the United States.  Agent Heston formerly worked in the Anti-
24 Smuggling Unit of Border Patrol and is currently employed with Immigration and Customs
25 Enforcement (ICE) as a criminal investigator, investigating numerous alien smuggling
26 organizations throughout Southern Arizona. Agent Heston has also worked in an undercover
27 capacity as a load car driver.  In its Notice of Expert Witness Testimony, the government

states that Agent Heston may testify regarding: (1) the structure of operations within alien smuggling organizations, *ie*. contacts in Mexico, foot-guides, drivers and stash houses: (2) how smuggling organizations bring individuals into the United States from Mexico; (3) methods of transportation, *ie*. "running heat" and/or driving in tandem; (4) methods of communication; and/or (5) methods of payment, *ie*. usually by a person who is a family member or close friend of the smuggled alien. (Doc. No. 41.) The government states that Agent Heston's testimony will be based on his knowledge, training and experience involved with smuggling organizations during his career. (*Id*.)

Defendant argues for preclusion of Agent Heston's testimony on four grounds: (1) Agent Heston's testimony cannot be verified by peer review or measured for scientific reliability, as required by *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 595 (1993), (2) the testimony Agent Heston intends to offer is not relevant to the present case, (3) the jury does not need to hear from an expert witness to understand a charge of conspiracy to transport and transportation of illegal aliens for profit, (4) Agent Heston's testimony will improperly comment on Defendant's state of mind.

**1.     Application of *Daubert***

Rule 702, Federal Rules of Evidence, states that

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert*, the Supreme Court interpreted Rule 702 as requiring the court to make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." In its assessment, the court may rely on several factors: (1) whether the proposed theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) whether the particular scientific technique, has a known or potential rate of error, and (4) whether the proposed

- 3 -

1 theory is widely accepted or has been able to attract only minimal support within the
2 community. *Daubert*, 509 U.S. at 592-93.

3       Defendant argues that Agent Heston's testimony cannot be verified by peer review
4 or evaluated for scientific reliability and that it therefore does not comport with the
5 requirements of Rule 702, Federal Rules of Evidence. These *Daubert* factors were not
6 intended, however, to be exhaustive nor to apply in every case. *See United States v. Hankey*,
7 203 F.3d 1160, 1168 (9th Cir. 2000) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137
8 (1999)). The *Daubert* factors are generally not applicable to an expert whose testimony is
9 based on "other specialized knowledge," where the expert's reliability depends heavily on
10 the knowledge and experience of the expert, rather than the methodology or theory behind
11 it. *Id.* at 1169. Agent Heston's testimony, based on his knowledge, training and experience
12 involved with smuggling organizations during his career, falls within the type of "other
13 specialized knowledge" to which courts decline to apply *Daubert*. *See id.* (holding that
14 Daubert factors do not apply to expert testimony of police officer as gang expert concerning
15 a gang's "code of silence"); *see also United States v. Mendoza-Paz,* 286 F.3d 1104 (9th Cir.
16 2002) (in allowing drug evaluation agent expert's testimony, a rigid application of the
17 Daubert factors was unnecessary where the reliability of the testimony was based largely on
18 the knowledge and experience of the witness); *United States v. Plunk*, 153 F.3d 1011, 1017
19 (9th Cir.1998), *as amended at* 161 F.3d 1195 (9th Cir. 1998) (upholding admission of expert
20 testimony from law enforcement officer regarding jargon of narcotics trade, on basis of
21 expert's training, experience, and personal knowledge). Accordingly, Agent Heston's
22 testimony should not be excluded on *Daubert* grounds.

23 **2.    Relevance of Agent Heston's testimony**

24       Although the Ninth Circuit has not addressed the admissibility of an alien smuggling
25 expert in a trial involving conspiracy to smuggle illegal aliens, Agent Heston's anticipated
26 testimony regarding the manner in which smuggling rings operate is analogous to "modus
27 operandi" testimony by government agents in drug trafficking conspiracy cases. As such,
28 it is relevant and admissible. *See United States v. Gil*, 58 F.3d 1414, 1422 (9th Cir. 1995)

1  (collecting cases consistently holding that government agents or similar persons may testify
2  as to the general practices of criminals to establish the defendants' modus operandi).  Modus
3  operandi testimony "helps the jury understand complex criminal activities, and alerts it to the
4  possibility that combinations of seemingly innocuous events may indicate criminal
5  behavior."  *Id*.  In the present case, the government bears the burden of proving that
6  Defendant, by trailing a van containing illegal aliens, participated for profit in a conspiracy
7  to transport those aliens into the United States.  Agent Heston is allegedly able to offer
8  testimony as to why, in the operation of an alien smuggling scheme, a driver would follow
9  the van being used to transport illegal aliens, why that driver would speed up to prevent
10 Border Patrol agents from getting behind the van, why and how the driver would
11 communicate with the driver of the van, and the financial incentive for a driver to commit
12 these acts.  In so testifying, Agent Heston would be offering information that may help the
13 jury to understand the complexities of alien smuggling.  Thus, to the extent that Agent
14 Heston offers testimony regarding how smuggling organizations generally operate to bring
15 individuals into the United States from Mexico, methods of transportation, *ie.* "running heat"
16 and/or driving in tandem, methods of communication, and how participants in an alien
17 smuggling operation are paid, such testimony relates to the conduct of Defendant in this
18 matter and is relevant.

**3.    Agent Heston's testimony will aid the jury in understanding the charge of conspiracy to transport and transportation of illegal aliens for profit**

Defendant argues that the government "wants its expert to tell jurors that he knows that Irvin is guilty because he followed a load vehicle and may have communicated with someone in that vehicle by way of a cell phone," and that the government does not need an expert in order to present this case to the jury. (Motion, pg. 7.)  To the extent that Defendant means to argue that Agent Heston's testimony is not "specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue" as required by Rule 702, Federal Rules of Evidence, the Court disagrees.  As stated above, Agent Heston's testimony would assist the jury in understanding why, in the operation of an alien smuggling

scheme, a driver would follow the van being used to transport illegal aliens, why that driver would speed up to prevent Border Agents from getting behind the van, why and how the driver would communicate with the driver of the van, and the financial incentive for the driver to commit these acts.

### 4. Agent Heston's testimony will not comment on Defendant's state of mind

Defendant argues that Agent Heston's testimony will constitute an opinion or inference as to whether Defendant had the mental state or condition constituting an element of the crime charged, in violation of Rule 704(b), Federal Rules of Evidence. Rule 704(b) prohibits an expert from opining on the mental state of a defendant, because whether a defendant acted with the necessary *mens rea* is an issue of fact for the jury alone to consider. However, at oral argument, the government stated that Agent Heston will testify only as to his general observations regarding alien smuggling operations. According to the government, Agent Heston will not draw comparisons between his general observations and the facts of the present case, nor will Agent Heston testify as to Defendant's mental state. The Court is not aware of any anticipated testimony of Agent Heston that threatens to violate Rule 704(b) requirements, and therefore finds Defendant's argument to be without merit.

### RECOMMENDATIONS

In view of the foregoing, it is recommended that, after its independent review of the record, the District Court DENY Defendant Irvin Malboa-Pena's Motion in Limine to Preclude Introduction of Expert Testimony filed on August 3, 2007. (Doc. No. 48.) The parties have **ten (10) days** to serve and file written objections to the Report and Recommendation. The parties are advised that any objections should be filed with the following caption: **CR 07-0756-TUC-CKJ.**

DATED this 24th day of August, 2007.

_____
Jennifer C. Guerin
United States Magistrate Judge